IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSE CRUZ ARELLANO,

      Petitioner,

v.                             No. CV 12-0112 MCA/LAM

RAY TERRY, Warden of Otero County
Processing Center, et al.,

      Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

### PROPOSED FINDINGS

**THIS MATTER** is before the Court on Petitioner's *Petition For Writ Of Habeas Corpus And Immediate Release From Custody (Doc. 1)* (hereinafter "Petition"), filed February 2, 2012. Respondents filed a response on February 29, 2012. [*Doc. 5*]. Petitioner filed a reply on March 14, 2012 [*Doc. 11*], and a "Notice of Recently[-]Decided Additional Authority" on April 27, 2012 [*Doc. 8*]. United States District Judge M. Christina Armijo referred the claims raised in Petitioner's Petition to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. [*Doc. 4*]. Having considered the parties' submissions, relevant law, and the record in this case, the undersigned, for the reasons set forth below, recommends that Petitioner's

---

[1]**Within fourteen (14) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

*Petition For Writ Of Habeas Corpus And Immediate Release From Custody* (*Doc. 1*) be **GRANTED** as set forth below.

The Court has jurisdiction of this § 2241 petition because Petitioner was confined in New Mexico at the time he filed the petition. *See* Petition [*Doc. 1*] at 3; *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("The plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies only in one district: the district of confinement."); *United States v. Scott*, 803 F.2d 1095, 1096 (10th Cir. 1986) ("A § 2241 petition for a writ of habeas corpus must be addressed to the federal district court in the district where the prisoner is confined.").

### Factual and Procedural Background

Petitioner states that he is a citizen of Mexico who was granted lawful permanent resident status on March 16, 2005. [*Doc. 1* at 3]. On April 16, 2009, Petitioner was arrested for three counts of auto burglary, in violation of N.M.S.A. 1978 § 30-16-3(B). *Id.* at 6; *see also* [*Doc. 5* at 1-2]. Petitioner posted bond and was released on May 15, 2009. [*Doc. 1* at 6 and *Doc. 5* at 2]. Respondents state that on June 22, 2011, Petitioner was convicted in state district court of these three counts of auto burglary. [*Doc. 5* at 1]. Petitioner, however, states that on October 20, 2011, he pled no contest to the three counts of auto burglary, was sentenced to three years imprisonment, which was suspended, and was ordered to serve three years of supervised probation. [*Doc. 1* at 6]. Despite the discrepancy regarding the date the parties state Petitioner was convicted, Respondents do not dispute Petitioner's claim that he was arrested and taken into Immigration and Custom Enforcement (hereinafter "ICE") custody on November 30, 2011. [*Doc. 1* at 6]. Respondents do not dispute that there was a gap in time between Petitioner's conviction and being taken into ICE custody, and the parties agree that Petitioner was not confined following his conviction. [*Doc. 1* at 6 and *Doc. 5*

at 2].  Petitioner is currently being held at the Otero County Processing Center.  *Id.* at 3.  Petitioner

is being detained under the provisions of Section 236 of the Immigration and Nationality Act,

codified at 8 U.S.C. § 1226(c), which ICE alleges subjects Petitioner to mandatory detention.  *Id.*

at 7 and Exhibit 3.[2]

  There are two issues before the Court: (1) whether Defendants Macias and Holder, Jr. are

correct respondents to the Petition; and (2) whether Petitioner is subject to mandatory detention

pending a decision on his removal.  Regarding the first issue, the parties agree that Respondent

Terry, the warden of the Otero County Processing Center where Petitioner is being held, is a proper

respondent to the Petition.  *See* [*Doc. 1* at 3-4] and [*Doc. 5* at 15].  The parties disagree, however,

about whether Respondent Macias, the Field Office Director for the El Paso Field Office of ICE, and

Respondent Holder, Jr., the Attorney General of the United States, are proper respondents.

Petitioner contends that Respondents Macias and Holder, Jr. are proper respondents because they

have jurisdiction to order the proper parties provide Petitioner a bond hearing if the Court grants that

request.  [*Doc. 1* at 3-4].  Respondents, however, contend that Respondent Terry is the only proper

respondent in this case because he has custody over Petitioner.  [*Doc. 5* at 15].

  Regarding the second issue before the Court, Petitioner contends that his mandatory

detention is unlawful for two reasons.  First, Petitioner contends that the mandatory detention

provision of § 1226(c) does not apply to him because he was only in custody for a short period of

time following his arrest, and was not taken into custody following his conviction.  [*Doc. 1* at 5

and 8-9].  Second, Petitioner contends that the mandatory detention provision of § 1226(c) does not

apply to him because he was taken into ICE custody two and a half years after his release from

---

[2]The Court notes that Petitioner states he is subject to the mandatory detention provision of 8 U.S.C. § 1126(c),
but that appears to be a typo because the mandatory detention provision is § 1226(c).

pre-conviction custody, and Petitioner contends that § 1226(c) applies only to persons taken into custody immediately after their release. *Id.* at 5 and 9. Petitioner notes that there is a Bureau of Immigration Appeals (hereinafter "BIA") decision holding that pre-conviction detention is sufficient to trigger mandatory detention under § 1226(c) (*Matter of Kotliar*, 24 I. & N. Dec. 124 (BIA 2007)), and a BIA decision holding that ICE does not have to detain a person immediately after release from criminal custody for mandatory detention under § 1226(c) to apply (*Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001)). [*Doc. 1* at 8-11]. Petitioner contends, however, that these cases are not entitled to deference by this Court. *Id.* at 12-22. Petitioner also notes that in a similar case filed in this Court, the undersigned recommended that the petitioner should be provided a bond hearing, and that recommendation was adopted by United States Senior District Judge Parker. *Id.* (citing *Melero Valdez v. Terry*, No. 2:11-CV-0897, JP/LAM (D. N.M. Feb. 2, 2012 and April 18, 2012) (*Docs. 14* and *18*)); *see also* [*Doc. 8*] (***Petitioner's Notice of Recently Decided Additional Authority***). Petitioner, therefore, asks the Court to issue an order releasing Petitioner from custody, or in the alternative, directing the Executive Office of Immigration Review give Petitioner a bond hearing within a set time period. [*Doc. 1* at 24]. In response, Respondents contend that ICE has lawfully detained Petitioner pursuant to § 1226(c) and the Court should defer to the BIA decisions interpreting the statute as requiring mandatory detention under these circumstances. [*Doc. 5* at 2-14].

## *Analysis*

### *A. Proper Respondents*

The Court will first address whether Defendants Macias and Holder, Jr. are proper respondents to this proceeding. As stated above, Petitioner contends that Respondents Macias and Holder, Jr. are proper respondents because they have jurisdiction to order the proper parties to

4

provide Petitioner a bond hearing if the Court grants that request.  [*Doc. 1* at 3-4].  Respondents, however, contend that Respondent Terry is the only proper respondent in this case because he has custody over Petitioner.  [*Doc. 5* at 15].

Pursuant to *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004), "in habeas challenges to present physical confinement - 'core challenges' - the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." (citations omitted).  However, the United States Supreme Court has "left open the question of whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation," and noted in *Padilla* that the circuits are split on that question. *Id.* at 435 n.8.  The parties have cited to no Tenth Circuit authority on the issue of whether the Attorney General or ICE Field Director are proper respondents to a habeas petition filed by an alien detained pending deportation, and the Court has not found any.  The Court notes that the issue of the proper respondent does not affect its jurisdiction over this proceeding.  *See Von Kahl v. United States*, Nos. 06-3348, 06-3370, 321 Fed. Appx. 724, 727 n.1, 2009 WL 799024 (10th Cir. March 27, 2009) (unpublished) (explaining that "failure to name the proper custodian as respondent does not affect [either the 10th Circuit Court's or the District Court's] subject-matter jurisdiction," and noting that the Government had filed a brief on the respondent's behalf, so the Court proceeded to the merits).  Because the United States presents no reason to exclude Defendants Macias or Holder, Jr. from the proceeding, other than citing to *Padilla*, which did not rule on this issue, the Court finds no reason to dismiss Defendants Macias and Holder, Jr.  *See, e.g., Khodr v. Adduci*, 697 F.Supp. 2d 774, 776-77 (E.D. Mich. 2010) (finding that the ICE District Director was the proper party to a similar habeas petition and explaining that, even if the proper respondent was the warden, the change of respondent is a "simple procedural formality" and "any error would be harmless").

5

The Court, therefore, recommends that Respondents Macias and Holder, Jr., as well as Respondent Terry, remain as respondents in this proceeding.

### B. Mandatory Detention Under Section 1226(c)

Section 1226(a) governs the detention of an alien pending a decision on whether the alien is to be removed from the United States, and provides that the Attorney General may release the alien on bond or conditional parole if he or she does not pose a danger to the community and is not a flight risk.  8 C.F.R. § 236.1(c)(8).  Section 1226(c)(1), however, mandates detention of specified criminal aliens, including those who are deportable for having committed offenses under § 1227(a)(2)(A)(iii), without an opportunity for a bond hearing before an immigration judge.  The United States contends that Petitioner is deportable for having committed offenses under § 1227(a)(2)(A)(iii), which states that an alien is deportable if he or she "is convicted of an aggravated felony at any time after admission."  [*Doc. 5* at 3 and n.1].  Petitioner does not contest this assertion.

Section 1226(c) mandates detention of specified criminal aliens "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." While there are exceptions to this mandatory detention provision in § 1226(c)(2), the parties do not contend that those exceptions apply to Petitioner.  *See* [*Doc. 5* at 3].  In *Matter of Kotliar*, the BIA held that release from pre-conviction detention was sufficient to satisfy the "when released" requirement when mandatory detention is triggered under § 1226(c) (24 I. &N. Dec. at 125), and in *Matter of Rojas*, the BIA held that an alien was subject to mandatory detention under § 1226(c), even though he was not immediately taken into custody by immigration officials when released from incarceration (23 I. &N. Dec. at 127) (alien had been released from incarceration two days earlier).

6

### 1. *Pre-Conviction Confinement*

The Court first addresses Petitioner's contention that § 1226(c) does not apply to him because he was only in custody following his arrest, and was not placed into physical custody following his conviction. Petitioner contends that his detention prior to his conviction does not satisfy the "when released" requirement of § 1226(c) because that provision is not triggered until there is a conviction. [*Doc. 1* at 8-9]. The Court agrees that § 1226(c) did not apply to Petitioner until his conviction because § 1226(c) applies to Petitioner by virtue of § 1227(a)(2)(A)(iii), which requires that an alien be "*convicted* of an aggravated felony" (emphasis added). However, § 1226(c) explicitly states that, for specified criminal aliens, mandatory detention is required "when the alien is released, *without regard to whether the alien is released on parole, supervised release, or probation* . . ." (emphasis added). Therefore, the triggering event for mandatory detention to apply was Petitioner's conviction, and his release on supervised probation following that conviction satisfies the "when released" requirement of § 1226(c). The Court finds that, to the extent *Matter of Kotliar* holds that an alien is subject to mandatory detention under § 1226(c) based on release from custody from an arrest preceding a conviction, this holding is contrary to the plain language of § 1227(a)(2)(A)(iii) that an alien is not deportable until he or she is *convicted* of an aggravated felony.

Next, Petitioner contends that mandatory detention provision does not apply to him because he was not taken into physical custody following his conviction, but was, instead, placed on probation. [*Doc. 1* at 8-9] and [*Doc. 6* at 2-4]. The Court finds this argument unavailing. Nowhere in § 1226 does Congress state that an alien must be released from physical custody for the mandatory detention provision to apply. Moreover, even though Petitioner was released from physical custody prior to his conviction, that does not mean that he was free of the Court's custody

or control. *See, e.g., Schwartz v. N.M. Corr. Dept. Probation and Parole*, No. 09-2302, 384 Fed. Appx. 726, 731, 2010 WL 2531456 (10th Cir. June 24, 2010) (unpublished) (explaining that a habeas petitioner who had been placed on parole was still "in custody" because he is subject to restraints on his liberty) (citation omitted); *United States v. Draper*, 995 F.2d 982, 987 (9th Cir. 1993) (explaining that "absconding from pretrial release amounts to escape from custody under the Sentencing Guidelines").

Petitioner cites several cases in support of his argument that "released" requires physical confinement under this statute. [*Doc. 6* at 3-4] (citing *Louisaire v. Muller*, 758 F.Supp.2d 229, 236 (S.D.N.Y.2010); *Alikhani v. Fasano*, 70 F.Supp.2d 1124, 1130 (S.D. Cal. 1999); *Burns v. Cicchi*, 702 F.Supp.2d 281, 288 (D. N.J. 2010); *Beckford v. Aviles*, Civil Action No. 10-2035 (JLL), 2011 WL 3515933, *7 (D. N.J. Aug. 9, 2011) (unpublished); *Saysana v. Gillen*, 590 F.3d 7, 10 (1st Cir. 2009); *Quezada-Bucio v. Ridge*, 317 F.Supp.2d 1221, 1230 (W.D.Wash.2004). While these cases include statements that may <u>imply</u> that mandatory detention requires release from physical incarceration, such statements are dicta because none of these cases directly decided the issue of whether the term "released" in § 1226(c) required physical confinement. *See Louisare*, 758 F.Supp. at 238 (holding that for § 1226(c)(1) to apply, the alien must be released from "criminal sentences" related to an offense enumerated in § 1226(c)(1)(A)-(D), but does not address whether physical custody is a requirement for the statute to apply); *Alikhani*, 70 F.Supp.2d at 1130 (holding that § 1226(c) does not apply retroactively to persons who were released from custody prior to the effective date of the mandatory detention provision, and does not address whether physical custody is a requirement for the statute to apply); *Burns*, 702 F.Supp.2d at 288 (holding that mandatory detention provision does not apply because the petitioner was released from incarceration for an enumerated offense prior to the effective date of the statute, and does not address whether physical

Case 2:12-cv-00112-MCA-LAM   Document 9   Filed 05/25/12   Page 9 of 16

custody is a requirement for the statute to apply); *Beckford*, 2011 WL 3515933 at *7 (holding that § 1226(c)(1) does not apply because the petitioner was not taken into custody immediately upon his release from incarceration, but does not address whether physical custody is a requirement for the statute to apply); *Saysana*, 590 F.3d at 10 (holding that § 1226(c) applies only when an alien is released from custody for one of the offenses listed in § 1226(c)(1)(A)-(D), and does not address whether physical custody is a requirement for the statute to apply); *Quezada-Bucio*, 317 F.Supp.2d at 1230 (holding that § 1226(c) does not apply to aliens who were not taken into immigration custody immediately upon their release from custody, but does not address whether physical custody is a requirement for the statute to apply). Moreover, the holdings of these cases are not binding on this Court, especially where the facts of this case regarding the sequence of Petitioner's arrest, release pre-conviction, conviction, and sentencing to probation. In other words, the event that triggered mandatory detention (Petitioner's conviction for an enumerated offense) occurred after his release from pre-conviction incarceration but before his sentence of probation. The Court finds that Petitioner should not receive a windfall because he was released pre-conviction and was never incarcerated post-conviction when his conviction triggered mandatory detention.

For these reasons, the Court finds that Petitioner is not subject to mandatory detention under § 1226(c) based on his release from pre-conviction custody; however, Petitioner may be subject to mandatory detention based on his release on supervised probation following his conviction, if the other requirements of § 1226(c) are met.

### 2. Immediate Detention Required

Even though the Court finds that Petitioner may be subject to mandatory detention under § 1226(c) based on his release on probation following his conviction, the Court next addresses Petitioner's contention that he is not subject to mandatory detention under § 1226(c) because he was

9

not <u>immediately</u> detained when he was released from custody, but instead was detained at least a month after his conviction.[3]  Petitioner contends that the Court need not defer to the BIA's decision in *Matter of Rojas*, which holds to the contrary.  In determining immigration laws, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent."  *INS v. Cardoza-Fonseca*, 480 U.S. 421, 447-48 (1987) (quoting *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 n.9 (1984)).  Under *Chevron*, the Court must first determine whether "Congress has directly spoken to the precise question at issue," and, if it has, the Court "must give effect to the unambiguously expressed intent of Congress."  467 U.S. at 842-43 (footnote omitted).  If Congress has been silent or used language that is ambiguous, then an agency's interpretation of the statute is given controlling weight unless it is arbitrary, capricious or manifestly contrary to the statute.  *Id.* at 843-44 (footnote omitted).  Deference is appropriate where "Congress delegate[s] rule making power to an agency and thereby [seeks] to rely on agency expertise in the formation of substantive policy."  *Jurado-Gutierrez v. Greene*, 190 F.3d 1135, 1148 (10th Cir. 1999) (citation and internal quotation marks omitted).

While the Tenth Circuit Court of Appeals has not addressed whether the mandatory detention provision of § 1226(c) should apply to an alien who was not taken into custody immediately upon release, most federal district courts, including this Court, that have ruled on this issue have agreed that "when the alien is released" unambiguously means immediately after release from custody and have rejected the BIA's interpretation of § 1226(c).  *See Melero Valdez v. Terry*, No. 2:11-CV-0897,

---

[3]Again, the Court notes that the parties disagree over the date of Petitioner's conviction, with Petitioner stating that he was convicted on October 20, 2011, and Respondents stating that Petitioner was convicted on June 22, 2011. *Compare* [*Doc. 1* at 6] *with* [*Doc. 5* at 1].  Nevertheless, the parties agree that there was a gap between Petitioner's conviction and his detention.

JP/LAM (D. N.M. Feb. 2, 2012 and April 18, 2012) (*Docs. 14* and *18*) (holding that § 1226(c) did not apply where the petitioner was detained more than a year after the conviction that made him deportable under § 1227(a)(2)(A)); *Louisaire v. Muller*, 758 F.Supp.2d 229, 236 (S.D.N.Y. 2010) ("*Matter of Rojas*, however, is wrong as a matter of law and contrary to the plain language of the statute.  The clear purpose of § 1226(c)(1) is to authorize the mandatory detention of immigrants who have committed offenses enumerated within § 1226(c)(1)(A)-(D) *immediately* upon their release from criminal sentences for those *same offenses*, even if they are still serving part of their sentence . . . under parole, supervised release, or probation.") (citations and internal quotation marks omitted); *Khodr v. Adduci*, 697 F.Supp.2d 774, 774-75 (E.D.Mich. 2010) (finding that because § 1226(c) "clearly and unambiguously requires the Attorney General to take into custody certain aliens without delay in order to make applicable the mandatory detention provisions of 8 U.S.C. § 1226(c), the Court does not defer to the Board of Immigration Appeals' decision to the contrary in *Matter of Rojas*"); *Scarlett v. Dept. of Homeland Sec., ICE*, 632 F.Supp.2d 214, 219 (W.D.N.Y. 2009) (holding that § 1226(c) does not apply because the petitioner was not taken into immigration custody until more than eighteen months from the time of his release from incarceration on the underlying criminal charges); *Waffi v. Loiselle*, 527 F.Supp.2d 480, 488 (E.D.Va. 2007) (finding that § 1226(c) does not apply to an alien who was taken into immigration custody over a month after his release from state custody); *Quezada-Bucio v. Ridge*, 317 F. Supp. 2d 1221, 1231 (W.D.Wash. 2004) ("[T]he Court agrees . . . that the mandatory detention statute, [§ 1226(c)], does not apply to aliens who have been taken into immigration custody several months or several years after they have been released from state custody.") (footnote omitted); *Aguilar v. Lewis*, 50 F. Supp. 2d 539, 544 (E.D.Va. 1999); *Alwaday v. Beebe*, 43 F. Supp. 2d 1130, 1133 (D.Or. 1999); *Pastor-Camarena v. Smith*, 977 F. Supp. 1415, 1416-18 (W.D.Wash. 1997) (construing IIRIRA

11

§ 303(b)(3)(A), which "is a transitional rule that temporarily suspend[ed] operation of . . . § 1226(c)(1)"); *Nunez v. Elwood*, Civil Action No. 12-1488 (PGS), 2012 WL 1183701 at *3 (D.N.J. April 9, 2012) (unpublished) ("The Court finds that 'when . . . released' means 'immediately' and not 'any time after' release as determined by the BIA's interpretation [in *Matter of Rojas*]."); *Parfait v. Holder*, Civil No. 11-4877 (DMC), 2011 WL 4829391 at *6 (D.N.J. Oct. 11, 2011) (unpublished) (holding that because "taking the alien into custody more than two and one-half years after the alien is released does not fall within the command to take the alien into custody when the alien is released, the BIA's interpretation is contrary to the plain meaning of the statute"); *Beckford v. Aviles*, Civil Action No. 10-2035 (JLL), 2011 WL 3515933 at *7-9 (D.N.J. Aug. 9, 2011) (unpublished) (rejecting reasoning of *Matter of Rojas* and finding that the phrase "when the alien is released" is unambiguous and held that an alien who was taken into immigration custody nearly three years after he was released from incarceration was not subject to mandatory detention under § 1226(c)(1)); *Keo v. Lucero*, No. 1:11cv614, 2011 WL 2746182 *3-5 (E.D. Va. July 13, 2011) (unpublished) (holding that § 1226(c) does not apply when alien was released from incarceration eight years prior to being detained for removal proceedings); *Sylvain v. Holder*, Civil No. 11-3006 (JAP), 2011 WL 2580506 at *7 (D.N.J. June 28, 2011) (unpublished)  (holding that § 1226(c) does not apply when alien was released from incarceration four years prior to being detained for removal proceedings); *Dang v. Lowe*, Civil No. 1:CV-10-0446, 2010 WL 2044634 (M.D.Pa. May 20, 2010) (unpublished) (same interpretation of § 1226(c)); *Bromfield v. Clark*, No. C06-757RSM, 2007 WL 527511 at *4-5 (W.D. Wash. Feb. 14, 2007) (unpublished); *Boonkue v. Ridge*, No. CV 04-566-PA, 2004 WL 1146525 at *2 (D. Or. May 7, 2004) (unpublished).

The Court finds the reasoning of these decisions to be persuasive.  As stated in *Quezada-Bucio*, "if Congress had intended for mandatory detention to apply to aliens at any time

12

after they were released, it easily could have used the language '*after* the alien is released,' 'regardless of when the alien is released,' or other words to that effect.  Instead, Congress chose the word 'when,' which connotes a much different meaning." 317 F.Supp.2d at 1230.  The Court agrees that the word "when" in the context of release from custody means immediately upon release.  For example, when a court orders that a defendant shall serve a term of supervised release <u>when</u> the defendant is released from incarceration, the court does not mean that supervised release could start at any time after the defendant was released -- it means that the supervised release begins at the time of the release from incarceration.  As explained by the court in *Waffi*, "[t]he term 'when' includes the characteristic of 'immediacy,' referring in its primary conjunctive sense, to action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun." 527 F.Supp.2d at 488 (citing 20 The Oxford English Dictionary 209 (2d ed. 1989), and The American Heritage Dictionary of the English Language (4th ed. 2000)).  The Court agrees and finds that Congress was not ambiguous when it wrote that an alien is subject to mandatory detention "when the alien is released," and the clause "when the alien is released" means immediately after release and not "at any time after release."

Other federal district courts, on the other hand, in unpublished decisions, have held that the clause "when the alien is released" is ambiguous, and have given the BIA's decision in *Matter of Rojas* deference under the *Chevron* rationale.  *See Khetani v. Petty*, No. 12-0215-CV-W-ODS, 2012 WL 1428927 at *2 (W.D.Mo. April 24, 2012) (unpublished); *Santana v. Muller*, No. 12 Civ. 430(PAC), 2012 WL 951768 at *4 (unpublished); *Hernandez v. Sabol*, Civil No. 1:CV-11-1064, 2011 WL 4949003 at *3 (M.D.Pa. Oct. 18, 2011) (unpublished); *Diaz v. Muller*, Civil Action No. 11-4029 (SRC), 2011 WL 3422856 at *2-3 (D.N.J. Aug 4, 2011) (unpublished); *Gomez v. Napolitano*, No. 11 Civ. 1350 (JSR), 2011 WL 2224768 at *3 (S.D.N.Y. May 31, 2011)

(unpublished); *Sulayao v. Shanahan*, No. 09 Civ. 7347 (PKC), 2009 WL 3003188 at *4-6 (S.D.N.Y. Sept. 15, 2009) (unpublished); *Serrano v. Estrada*, No. 3-01-CV-1916-M, 2002 WL 485699 at *3 (N.D.Tex Mar. 6, 2002) (unpublished).  The Court, however, is not bound by any of these decisions and respectfully finds that the reasoning of these cases is not persuasive.  Statutory language should not be construed in a way that renders a term surplusage.  *McCloy v. U.S. Dept. of Agriculture*, 351 F.3d 447, 451 (10th Cir. 2003) ("Under a long-standing canon of statutory interpretation, one should avoid construing a statute so as to render statutory language superfluous.") (citation omitted). If the term "when the alien is released" means that the Attorney General shall take into custody any aliens who have committed offenses enumerated within § 1226(c)(1)(A)-(D) without regard to the timing of that alien's release from custody, then the phrase "when the alien is released" becomes surplusage.

In addition, the Court finds that interpreting § 1226(c) to mean that it applies when an alien is detained immediately comports with the Congressional intent behind the statute to prevent problems locating criminal aliens for deportation after their release, because, if those aliens are immediately detained, they pose no flight risk and the intent behind mandatory detention is attained. *See Demore v. Kim*, 538 U.S. 510, 531 (2003)).  This interpretation further comports with the Congressional intent to detain the most dangerous criminals because their immediate detention provides more protection to the community.  *See id.* ("[T]he justification for 8 U.S.C. § 1226(c) is based upon the Government's concerns over the risks of flight and danger to the community.") Moreover, mandatory detention is a harsh penalty that should be strictly and narrowly enforced.  *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (stating that "[a] statute permitting indefinite detention of an alien [raises] serious constitutional problem[s]" and, therefore, detention must comport with the Due Process Clause; "government detention violates that Clause unless the detention is ordered

14

in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint") (citations and internal quotation marks omitted).

The Court further finds that the United States' contention that immediate mandatory detention under § 1226(c) might be impractical or logistically infeasible to be without merit. *See* [*Doc. 5* at 11-13]. The United States relies on *United States v. Montalvo-Murillo*, 405 U.S. 711, 720 (1990) for this contention; however, the holding in *Montalvo-Murillo* is distinguishable. In that case, the United States Supreme Court overturned a district court's decision to release a suspect because his detention hearing was not held at his first appearance as was required by statute but was, instead, held eleven (11) days after his first appearance. *Id.* at 715-18. The United States Supreme Court held that the release of detainees when the Government fails to comply with a statutory command that a detention hearing be held immediately is too harsh a sanction. 405 U.S. at 718. Here, however, the Court is not mandating Petitioner's release; instead, the Court is merely ordering that Petitioner be given a bond hearing so an immigration judge can determine whether he is a threat to the community or a flight risk. At that hearing, the Government will still be allowed to make its arguments for detention based on flight risk and danger. A further distinction between this case and *Montalvo-Murillo* is that the delay in *Montalvo-Murillo* was eleven (11) days, whereas here Petitioner was detained at least a month, and perhaps even as much as five (5) months, after the conviction that made him deportable under § 1227(a)(2)(A)(iii).

For the reasons set forth above, the Court finds that § 1226(c) does not apply to Petitioner because he was not detained immediately upon release from custody. The Court, therefore, recommends that Petitioner should be provided an individualized bond hearing pursuant to 8 U.S.C.

15

§ 1226(a).  The Court further recommends that this hearing be provided to Petitioner **within 21 days** of these proposed findings being adopted by the Court.  If Petitioner is not given a hearing within that time period, the Court recommends that he be released pending issuance of a removal order.

### **RECOMMENDED DISPOSITION**

For the foregoing reasons, the Court recommends that Petitioner's *Petition For Writ Of Habeas Corpus And Immediate Release From Custody (Doc. 1)* be **GRANTED** as set forth above.

*Lourdes A. Martinez*
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**